# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CATHERINE BROWN, )<br>)<br>Plaintiff, )<br>) No. 23-cv-05311<br>v. )<br>) Judge Andrea R. Wood<br>DANIEL GUTIERREZ, et al., )<br>)<br>Defendants. ) | |

## ORDER

Defendants' motion to dismiss for failure to state a claim [16] is granted. The complaint is dismissed without prejudice. Plaintiff shall have until 10/16/2024 to file an amended complaint that remedies the deficiencies identified in the accompanying Statement. If Plaintiff declines to file an amended complaint by 10/16/2024, this case will be dismissed with prejudice and final judgment will be entered. Defendants' motion to stay discovery pending resolution of their motion to dismiss [32] is terminated as moot. Telephonic status hearing set for 10/23/2024 at 9:15 AM. To ensure public access to court proceedings, members of the public and media may call in to listen to telephonic hearings. The call-in number is (888) 557-8511 and the access code is 3547847. Counsel of record will receive an email 30 minutes prior to the start of the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.

## STATEMENT

Plaintiff Catherine Brown was driving on a residential street in Chicago when she was struck first by a vehicle being pursued at high speeds by a handful of Illinois State Troopers, Defendants Daniel Gutierrez, Alexander Giglio, Marcus Soto, Miguel Herrera, and Ryan McMahon, and then again by one of the trooper's vehicles. Because of the injuries Brown suffered in the collisions, she has brought the present action asserting a single claim under 42 U.S.C. § 1983, alleging that Defendants violated her Fourteenth Amendment right to substantive due process. Defendants have filed a motion to dismiss Brown's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) For the reasons that follow, Defendants' motion is granted.

**I.**

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Brown as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.2d 614, 618 (7th Cir. 2007). The complaint alleges as follows.[1]

On September 2, 2021, Illinois State Police troopers Daniel Gutierrez and Alexander Giglio received a radio alert concerning a red Dodge Durango. (Compl. ¶¶ 10–11, Dkt. No. 1.) Kenneth Brown ("Kenneth") was driving the Durango. (*Id.* ¶ 13.) After observing the Durango driving north on Interstate 57 ("I-57"), Gutierrez and Giglio began pursuing it, with Gutierrez at the wheel of their vehicle. (*Id.* ¶¶ 12, 14, 37.) During the pursuit, the two vehicles wove in and out of traffic at speeds over 100 miles per hour. (*Id.* ¶ 15.)

At some point, the Durango exited I-57 and the pursuit continued through residential streets at speeds over 90 miles per hour, with the vehicles sometimes travelling the wrong way on one-way streets. (*Id.* ¶¶ 17, 19–21.) Eventually, troopers Ryan McMahon, Marcus Soto, and Miguel Herrera joined Gutierrez and Giglio in their high-speed pursuit of the Durango.[2] (*Id.* ¶ 22.) On at least one occasion, Defendants attempted a precision immobilization maneuver to stop the Durango. (*Id.* ¶¶ 25–26.) That maneuver was unsuccessful but did damage the vehicles. (*Id.* ¶ 26.) As the chase continued, the vehicle driven by McMahon struck a civilian vehicle and caused an injury. (*Id.* ¶ 28.)

Finally, the chase ended when the Durango collided with a vehicle driven by Catherine Brown.[3] (*Id.* ¶¶ 33, 35.) In quick succession, Gutierrez's vehicle either struck Brown's vehicle or caused another vehicle to strike Brown's vehicle a second time. (*Id.* ¶ 37.) Brown was injured as a result of the two collisions. (*Id.* ¶ 38.) In her single-count complaint, Brown asserts a claim pursuant to § 1983 alleging that Defendants' actions on September 2, 2021, violated her right to substantive due process.

**II.**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] Although Defendants ask this Court to take judicial notice of certain materials outside the pleadings, the Court finds that the motion can be resolved on the pleadings alone.

[2] It is not clear from the complaint whether McMahon, Soto, and Herrera pursued the Durango in one or multiple vehicles.

[3] Brown is of no relation to Kenneth. For purposes of clarity, the Court refers to Brown by her last name and Kenneth by his first name.

liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

The Fourteenth Amendment's due process clause has been interpreted to have a substantive component, "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986). Substantive due process "was not meant to serve as a 'font of tort law to be superimposed upon whatever systems may already be administered by the states,'" but only to sanction government actions involving substantial culpability. *Bublitz v. Cottey*, 327 F.3d 485, 490 (7th Cir. 2003) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). To state a substantive due process claim requires allegations that meet the "high standard" of showing "conduct under the color of state law that violated a fundamental right or liberty and was so arbitrary and irrational as to shock the conscience." *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (internal quotation marks omitted).

According to Defendants, the allegations of their conduct in the emergency circumstances before them do not shock the conscience. Whether actions rise to the level of conscience-shocking depends on the context. *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998). Where officers are pursuing a fleeing suspect, they are given significant latitude in balancing the "competing directives" of acting decisively while, at the same time, showing restraint. *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021). Thus, in that context, the standard for conscience-shocking behavior requires showing that the relevant "conduct [was] intended to injure in some way unjustifiable by any government interest." *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007) (quoting *Lewis*, 523 U.S. at 849); *see also Earley v. City of Chicago*, No. 23 C 801, 2024 WL 774863, at *6 (N.D. Ill. Feb. 26, 2024) ("When a police officer faces a decision without an opportunity to engage in reasoned deliberation, the officer's conduct cannot be said to shock the conscience and therefore result in a constitutional deprivation under the 14th Amendment Due Process Clause unless the decision was made with the intent or purpose to harm or injure."). And the Seventh Circuit has explained that "even a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight from that stop, is a legitimate government interest." *Steen*, 486 F.3d at 1023.

Here, the Court finds that none of Defendants' actions taken in connection with their pursuit of the Durango showed an intent to harm. Rather, Defendants were faced with a fleeing suspect and all of their actions were taken with the intent of apprehending Kenneth. Brown's allegations as to Defendants' conduct—namely, their decision to continue a high-speed pursuit down residential streets and violate traffic laws—"raise questions of negligence or recklessness [that do] not rise to the level of conscience-shocking—that is to say, intentional conduct." *Winston v. City Chicago*, 130 F. Supp. 3d 1218, 1224 (N.D. Ill. 2015) (finding that the allegations of police officers maintaining a chase "at a high rate of speed through a residential neighborhood at 7 p.m." did not shock the conscience). That Defendants might have abandoned the chase once it became too dangerous and sought out Kenneth the next day "goes to the question of whether the pursuit was wise, not whether it violated the Constitution." *Steen*, 486 F.3d at 1023.

Brown contends that Defendants' intent to harm can be inferred from their decision to continue their pursuit even after one of the officer's vehicles collided with a bystanding vehicle

and caused injury. But while this earlier collision suggests that Defendants had some awareness that their continued pursuit could cause another injury to a bystander, it does not further suggest that they intended to cause such injury. Even in a non-emergency situation, "[m]erely showing that the officer created a recognizable but generic risk to the public at large" is insufficient." *Lisby v. Henderson*, 74 F.4th 470, 473 (7th Cir. 2023) (internal quotation marks omitted). And, in an emergency situation like a high-speed pursuit, "police officers often encounter . . . rapidly changing circumstances that require them to make hasty decisions under pressure." *Earley*, 2024 WL 774863, at *6. "Occasionally, police officers make the wrong judgment in these situations . . . . But mistakes of judgment, even those that result in tragedy, do not give rise to liability under § 1983." *Winston*, 130 F. Supp. 3d at 1225.

Finally, the Court rejects Brown's contention that a lesser standard than intent-to-harm applies here, given that Defendants' chase lasted long enough for them to have the opportunity to deliberate as to the appropriateness of their actions. Under Seventh Circuit precedent, a court "does not scrutinize an officer's actions down to the second to determine whether a pursuit was the type of emergency in which the intent-to-harm standard applies" but rather "broadly applies the standard where there was a pursuit." *Moore v. Town of Merrillville*, No. 2:21 CV 317, 2023 WL 5163956, at *5 (N.D. Ind. Aug. 11, 2023). Here, there is no question that Defendants were engaged in a high-speed pursuit of the Durango and therefore, to state a claim, Brown had to sufficiently plead that Defendants acted with an intent to harm.

At bottom, Brown's substantive due process claim fails because her complaint is devoid of any allegations showing that Defendants had "some intent to harm that [went] beyond the traffic stop, the decision to pursue, and the decision to not terminate the pursuit at some point before the crash." *Steen*, 486 F.3d at 1024. With no allegations of conscience-shocking behavior on the part of any Defendant, Brown's § 1983 substantive due process claim must be dismissed.

### III.

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 16) is granted. The complaint is dismissed without prejudice.

Dated: September 18, 2024

                                                                          Andrea R. Wood
                                                                          United States District Judge